# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFREY S. GLADHILL | * |
| 12757 Parkhead Road | |
| Big Pool, MD 21711 | * |
| | |
| Plaintiff | * |
| v. | |
| | * |
| WASHINGTON COUNTY BOARD | |
| OF EDUCATION | * |
| 10435 Downsville Pike | |
| Hagerstown, MD 21740 | * |
| | |
| Serve On: Melissa Williams, | * |
| Board President | |
| 10435 Downsville Pike | * |
| Hagerstown, MD 21740 | |
| | * |
| and | |
| | * |
| DAVID T. SOVINE, *individually* | |
| Superintendent | * |
| Washington County Public Schools | |
| 10435 Downsville Pike | * |
| Hagerstown, MD 21740 | |
| | * |
| and | |
| | * |
| MELISSA A. WILLIAMS, *individually* | |
| President | * |
| Washington County Board of Education | |
| 10435 Downsville Pike | * |
| Hagerstown, MD 21740 | |
| | * |
| and | |
| | * |
| THERESA L. BAKER, *individually* | |
| Executive Director of Human Resources | * |
| Washington County Public Schools | |
| 10435 Downsville Pike | * |
| Hagerstown, MD 21740 | |
| | * |
| and | |
| | * |

CIVIL ACTION No.

```
                                          *

                                          *

                                          *

JENNIFER WEBSTER, individually            *
Associate Superintendent for
Administration and Leadership
Washington County Public Schools
10435 Downsville Pike
Hagerstown, MD 21740

            Defendants.

*     *     *     *     *     *     *     *     *     *     *     *     *
```

## COMPLAINT

Plaintiff, Jeffrey S. Gladhill, by and through his undersigned counsel, hereby brings this Complaint against the Defendants, the Washington County Board of Education, David T. Sovine, Melissa A. Williams, Theresa L. Baker, and Jennifer Webster, and, in support thereof, states as follows:

## INTRODUCTION

1. Defendant, Washington County Board of Education (the "Board" or the "Board of Education"), has employed Plaintiff, Jeffrey S. Gladhill ("Dr. Gladhill") since 2003.  Since 2007, the Board employed Dr. Gladhill as the Director of Special Education for Washington County Public Schools ("WCPS").  However, on November 10, 2022, Defendants, Theresa L. Baker, SHRM-CP, Executive Director of Human Resources for WCPS ("Ms. Baker") and Jennifer Webster, Ed.D, Associate Superintendent for Administration and Leadership for WCPS ("Dr. Webster"), notified Dr. Gladhill that Defendant, David T. Sovine ("Dr. Sovine"), Superintendent of WCPS, was transferring Dr.

2

Gladhill to an Assistant Principal position pursuant to §6-201 of the Education Article of the Annotated Code of Maryland.  Dr. Gladhill's transfer took effect December 2, 2022 and is a demotion in pay, rank, and responsibilities.

2. Individually and in concert with the other Defendants, Dr. Sovine improperly utilized his authority under §6-201 of the Education Article to dismiss Dr. Gladhill from his position as Director of Special Education and demote him to a position that is lower in rank, pay, and responsibilities, thereby bypassing the due process requirements that Maryland law expressly affords to Board employees, such as Dr. Gladhill, before they can be dismissed.

3. Dr. Gladhill timely requested a copy of the charges against him and an arbitration hearing to appeal his dismissal from Director of Special Education, pursuant to §6-202 of the Education Article of the Annotated Code of Maryland, to the Board and Defendant, Melissa A. Williams ("Ms. Williams"), President of the Board, among others.  To date, the Board has not responded to Dr. Gladhill's request for a copy of the charges against him and arbitration request, nor afforded him an arbitration hearing.

4. The Defendants acted individually and in concert to deprive Dr. Gladhill of his position as Director of Special Education without due process of law and in contravention of Maryland law and Dr. Gladhill's constitutional rights.

**<u>PARTIES</u>**

5. Dr. Gladhill incorporates all other paragraphs of this Complaint as if fully restated herein.

3

6. Defendant Washington County Board of Education (the "Board" or the "Board of Education") constitutes the governing body for the Washington County's public school system. It is a local government entity that is subject to suit, as reflected in Md. Code Ann., Educ. §3-104. The Board's principal office is located at 10435 Downsville Pike Hagerstown, MD 21740. The Board is a corporate body created under Md. Code Ann., Educ. §3-103 and controls educational matters that affect the county, including the oversight and management of supervision of public schools within the county's geographical jurisdiction, pursuant to Md. Code Ann., Educ. §4-101.

7. Defendant, David T. Sovine ("Dr. Sovine"), is an individual and the Superintendent of WCPS.

8. Defendant, Melissa A. Williams ("Ms. Williams"), is an individual and the Board President.

9. Defendant, Theresa A. Baker ("Ms. Baker"), is an individual and the Executive Director of Human Resources for WCPS.

10. Defendant, Jennifer Webster, Ed.D ("Dr. Webster"), is Associate Superintendent for Administration and Leadership for WCPS and was Dr. Gladhill's supervisor when he was the Director of Special Education for WCPS.

11. Plaintiff, Jeffrey S. Gladhill ("Plaintiff" or "Dr. Gladhill"), is an individual who resides at 12757 Parkhead Road, Big Pool, MD 21711. Until November 10, 2022, the Board

employed Dr. Gladhill as the Director of Special Education for WCPS. Effective December 2, 2022, the Board began employing Dr. Gladhill as the Assistant Principal at Western Heights Middle School.

## JURISDICTION AND VENUE

12. Dr. Gladhill incorporates all other paragraphs of this Complaint as if fully restated herein.

13. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims for deprivation of civil rights under 42 U.S.C. §§ 1983 and 1985 and the United States Constitution.

14. The Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

15. Venue as to all claims is appropriate in this Court pursuant to 28 U.S.C. § 1391 inasmuch as the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this District and, specifically, Washington County, Maryland.

16. This Court has personal jurisdiction over the parties and these actions.

## FACTS COMMON TO ALL COUNTS

17. Dr. Gladhill incorporates all other paragraphs of this Complaint as if fully restated herein.

18. The Board has employed Dr. Gladhill for nearly twenty (20) years.  From 2007 through November 10, 2022, Dr. Gladhill served as the Director of Special Education at the Center of Education Services for WCPS.

19. During his tenure as Director of Special Education, Dr. Gladhill consistently and repeatedly received satisfactory evaluations.

20. However, without *any* due process and in contravention of Maryland law and Dr. Gladhill's federal and State constitutional rights, Dr. Sovine abruptly demoted Dr. Gladhill to Assistant Principal at Western Heights Middle School, effective December 2, 2022.

21. Dr. Gladhill's transfer was precipitated by concerns surrounding the transfer of a third-grade student ("Doe") to a special education classroom.

22. On or about September 28, 2022, Stacey Baker ("Principal Baker"), the principal of Paramount Elementary School, a WCPS school, contacted Dr. Gladhill about Doe, who enrolled at Paramount on September 14, 2022.  According to Principal Baker, Doe had never had formal education and was unable to recognize letters, numbers, or sight words. As such, Doe could not access classroom instruction.  Principal Baker advised Dr. Gladhill of the observations, evaluations and interventions that the school had tried up until that point to help Doe.  Principal Baker was concerned that Paramount could not meet Doe's educational needs.  That same day, Dr. Gladhill briefly observed Doe in her classroom at Paramount for approximately ten (10) minutes.

23. In order to support Principal Baker and the school-based team that would be making decisions about Doe's educational needs, Dr. Gladhill enlisted the services of Nancy Schmitt, Coordinator of MSS/JDP for WCPS.

24. Dr. Gladhill communicated generally with Ms. Schmitt, Principal Baker and other WCPS personnel about whether Doe's educational needs could be best met at Paramount or in a Connections Classroom at Eastern Elementary School, which is a special education classroom. The Connections Classroom at Eastern Elementary could provide Doe with individualized instruction with a highly-qualified teacher available to her throughout the day, as well as the ability to attend a third-grade classroom as Doe could tolerate. In contrast, Paramount did not have a paraprofessional available to work with Doe. The objective with Doe, as with any child in potential need of special education services, was to place her in the least restrictive environment ("LRE") that would best support her instructional needs.

25. As per WCPS protocol and past conversations between Dr. Gladhill and Ms. Schmitt, Dr. Gladhill expected that Ms. Schmitt would personally observe Doe, meet and collaborate with Principal Baker, Doe's classroom teacher, Doe's family, and the principal at Eastern, Daniel Fowler ("Principal Fowler"), to determine whether a transfer to Eastern would be the LRE to best support Doe's instructional needs.

26. Consistent with his position as Director of Special Education, Dr. Gladhill was not directly involved in decisions about Doe's education, but was available to support Doe's school-based team as needed. Dr. Gladhill periodically checked in with Ms. Schmitt, Ms. Baker and other WCPS personnel to stay apprised of the matter and learned that Doe's team had decided to transfer her to Eastern Elementary.

27. Shortly after Doe's transfer, Dr. Gladhill learned that there were concerns about whether the transfer was appropriate. Specifically, Principal Fowler was concerned that he had not been consulted prior to the transfer and that some of Doe's issues could have been the result of unresolved medical issues.

28. At that time, Dr Gladhill attempted to understand the process that had been followed to transfer Doe. Upon information and belief, Ms. Schmitt may not have personally observed Doe and/or sufficiently collaborated with other WCPS employees, including Principal Fowler, to determine the LRE to meet Doe's needs before Doe was transferred. While Doe's transfer to Eastern may have been the best LRE for Doe, that decision could not have been made without sufficient observation and collaboration among the school-based team.

29. In October, 2022, WCPS personnel, including Dr. Webster and Ms. Baker, began investigating Doe's transfer.

30. Upon information and belief, Dr. Webster and Ms. Baker interviewed Ms. Schmitt, Principal Baker and Principal Fowler about Doe's transfer.

31. On November 1, 2022, Dr. Webster issued a "Letter of Concern" to Dr. Gladhill, which was disciplinary and expressed her concern over Dr. Gladhill's involvement in transferring Doe to Eastern.

32. According Dr. Webster's investigation, Dr. Gladhill requested that Ms. Schmitt meet with the school and Doe's family.  Ms. Schmitt reported to Dr. Webster and Ms. Baker that she felt the decision to transfer Doe to Eastern had already been made by Dr. Gladhill and Principal Baker prior to her involvement and, as such, she merely facilitated the transfer with Principal Baker and Doe's family.  This is inaccurate.  Dr. Gladhill did not direct Ms. Schmitt to transfer Doe to Eastern and, instead, requested Ms. Schmitt provide feedback to and support Principal Baker regarding Doe.  Notably, in determining that discipline was appropriate for Dr. Gladhill, Dr. Webster relied on the alleged statements of Ms. Schmitt, who potentially illegally placed Doe at Eastern.

33. In the "Letter of Concern," Dr. Webster advised Dr. Gladhill that, "any failure to meet the expectations expressed in this document or any failure to exercise professional judgment will result in additional disciplinary action up to, and including, a recommendation for termination of your employment."

34. Based on this unambiguous advisement, it is clear that Dr. Webster, at least at the time of issuing the Letter of Concern, intended for it to be the final disposition of Dr. Gladhill's

alleged misconduct.  Similarly, Dr. Gladhill rightfully regarded the Letter of Concern as the final punishment for his alleged misconduct.

35. However, without any intervening events, on November 10, 2022, Ms. Baker and Dr. Webster met with Dr. Gladhill and informed him that he was being placed on administrative leave, effective immediately.  They also informed him that he had two options: (1) accept what they termed a "transfer" to an Assistant Principal position; or (2) accept a severance agreement and resign.  When Dr. Gladhill stated that the transfer to Assistant Principal was a demotion that would substantially limit and prevent him from getting senior positions in neighboring counties, Ms. Baker and Dr. Webster strongly encouraged Dr. Gladhill to resign, noting how attractive the offer was and that it would look better for future career prospects to have resigned, rather than having an assistant principal position on his resume.  The Assistant Principal position was a demotion in pay, rank and responsibilities.  Ms. Baker and Dr. Webster did not provide Dr. Gladhill with a copy of the charges against him and did not inform Dr. Gladhill of his right to appeal his demotion.

36. At the conclusion of that meeting, Dr. Gladhill was escorted out of the building, his access to email was terminated, and his badge, computer and phone were confiscated.

37. The following day, Ms. Baker wrote to Dr. Gladhill, confirming that Dr. Sovine was "administratively transferring" him "based on the needs of the district" pursuant to §6-201

of the Education Article to Assistant Principal at Western Heights Middle School. Ms. Baker also confirmed the alternative option to resign with a severance. Again, Dr. Gladhill was not given a copy of the charges against him or apprised of his right to a hearing as provided by §6-202 of the Education Article.

38. Administrative transfers, as contemplated by §6-201 of the Education Article, must benefit the needs of the school system and be based on sound educational policy. COMAR 13A.01.05.06B; *see also Anderson Blake v. Board of Educ. of Prince George's County,* 5 Ops. of MSBE 415 (1989). Curiously, Dr. Gladhill had not been in a school setting for over seventeen (17) years prior to his demotion and his skills as the Director of Special Education for the last fifteen (15) years did not transfer to the skills needed to be an assistant principal.

39. In an email dated November 12, 2022 to undersigned counsel, Ms. Baker stated that Dr. Gladhill was not being transferred for cause: "…we are not recommending termination or discipline; therefore, there is no statement of charges."

40. §6-201 of the Education Article provides that as to "[a]ll principals, teachers, and other certificated personnel," "the county superintendent shall: (i) Assign them to their positions in the schools; (ii) Transfer them as the needs of the schools require; (iii) Recommend them for promotion; and (iv) Suspend them for cause and recommend them for dismissal in accordance with § 6-202 of this subtitle." Md. Code Ann., Educ. § 6-201(b)(2).

41. Board Policy GCDA(II)(B) provides, "[t]he Superintendent is authorized under Maryland law to assign and to transfer staff as the needs of the schools require."

42. Board Policy GCDA(II)(A) provides, "[e]mployees are to be transferred in accordance with Maryland law, the negotiated agreements, and the *Personnel Policies and Procedures for Administrators and Supervisors*." The *Personnel Policies and Procedures for Administrators and Supervisors* is a negotiated agreement between the Board and the Washington County Association of Administrators and Supervisors.

43. Section 5.6 of the *Personnel Policies and Procedures for Administrators and Supervisors* provides:

> 5.6 Involuntary Transfers When an employee is involuntarily transferred to meet the needs of the district into a different school- or district-based position with a lower salary than the transferred member currently earns, their current salary will be maintained for one year. At the conclusion of the initial transfer year, the transferred employee's salary will be recalculated to reflect the actual salary of the position.
>
> Employees may make a request to the Superintendent to have their salaries maintained for an additional period of time beyond the initial year by submitting a letter to the Director of Human Resources. Letters must be submitted no later than February 1st of the year immediately preceding the year for which the salary is being requested.
>
> When an employee is involuntarily transferred to meet the needs of the district into a different school- or district-based position with a higher salary than the transferred member currently earns, their salary will be changed to the higher salary at the time of transfer.
>
> When an employee is involuntarily transferred to a position identified at a lower level on the salary schedule due to noted

> performance deficiencies, they shall, upon reassignment, receive pay at the salary scale for the newly assigned position. Such employees are not eligible to request that their salary be maintained at the level of the prior position.

44. Transfers resulting in demotions pursuant to Section 5.6 of *Personnel Policies and Procedures for Administrators and Supervisors* are not permissible under Maryland law or the U.S. Constitution.  The U.S. District Court for the District of Maryland has rejected the argument that lateral transfers are the same as demotions under Maryland law or that a county superintendent is authorized under §6-202 of the Education Article to demote an employee without first providing due process.  *Rosin v. Hill*, Civil Action TDC-21-0983, at *4 (D. Md. Aug. 22, 2022).

45. A demotion resulting in a loss of compensation deprives a public school employee of a property interest. *Baker v. Kent Cnty. Bd. of Educ.,* No. WMN-07-CV-0824,2008 WL 11422694, *6-7 (D. Md. Oct. 15, 2008).

46. Once a property interest in public employment is conferred, a state "may not constitutionally authorize the deprivation of such an interest… without procedural safeguards.  *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541(1985).  "Where state law has provided procedural protections against a demotion of a public school employee, there is a due process property interest in maintaining that position." *Rosin v. Hill*, Civil Action TDC-21-0983, at *6.

47. Thus, Dr. Gladhill's due process rights under the Fourteenth Amendment are not necessarily determined by Maryland law, Board Policies, or Section 5.6 of the *Personnel Policies and Procedures for Administrators and Supervisors*, but federal constitutional principles of due process." *Rosin v. Hill*, Civil Action TDC-21-0983, at *8.

48. § 6-201 permits transfers; it does not permit a county superintendent to demote principals, teachers and other certificated personnel.  A demotion resulting in a reduction in pay is not equivalent to a lateral transfer, either in the plain meaning of those terms or how they are defined elsewhere in the Maryland Code. The State Personnel and Pensions Article of the Maryland Code defines "[r]eassignments" and "transfers" as relating to movement to a "position of equal grade and service" or "the same grade," Md. Code Ann., State'Pers. & Pens. § 7-602, while it separately provides that to "demote [an] employee to a lower pay grade" constitutes a "disciplinary action," id. § 11-104(5).  *See also Rosin v. Hill*, Civil Action TDC-21-0983, at *4 (recognizing that a lateral transfer is not equivalent to a demotion under the plain meaning of those terms or how those terms are defined by Maryland law).

49. Nevertheless, Dr. Sovine improperly utilized his authority under §6-201 of the Education Article to dismiss Dr. Gladhill from his position as Director of Special Education and demote him to a position that is lower in rank, pay, and responsibilities, thereby bypassing

the due process requirements afforded to Board employees such as Dr. Gladhill before they can be dismissed.

50. Maryland law has express procedures that govern the suspension or dismissal of a public school employee, including a "teacher, principal, supervisor, assistant superintendent, or other professional assistant," by the relevant county board of education "on the recommendation of the county superintendent." Md. Code Ann., Educ. § 6-202(a)(1).

51. The only grounds upon which such an employee may be dismissed are: "[i]mmorality; [m]isconduct in office; [i]nsubordination; [i]ncompetency; and [w]illful neglect of duty." *Id.*

52. However, before such an employee may be removed from a position for one of those reasons, "the county board of education shall send the individual a copy of the charges against the individual" and give the individual an opportunity to request a hearing before the local board or to request arbitration. *Id.* § 6-202(a)(2)(i).

53. If requested within the ten-day period, either the local board or the arbitrator would then determine whether sufficient cause existed for dismissal. *Id.* § 6-202(a)(4)-(5).

54. In other words, before Dr. Gladhill could have been removed from the position of Director of Special Education, the following were statutorily required to have occurred: (1) Dr. Sovine should have made a recommendation for his dismissal to the Board; (2) the Board should have provided to Dr. Gladhill a copy of the charges against him and notified him of

his hearing and arbitration rights; (3) a hearing held; and (4) the Board or the arbitrator must have found that the Board had sufficient cause to dismiss Dr. Gladhill for one of the reasons listed in Md. Code Ann., Educ. § 6-202(a)(1).

55. Based on this statutory scheme, Dr. Gladhill clearly had a protectable due process property right relating to his removal from the position of Director of Special Education, namely the process set forth in §6-202. *Loudermill*, 470 U.S. at 547-48; *Wilson v. Layne*, 526 U.S. 603, 614 (1999); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Rosin v. Hill*, Civil Action TDC-21-0983, at *4.

56. Dr. Gladhill was not dismissed from his position for immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty, within the meaning of Md. Code Ann. Educ. Art. §6-202(a)(1). In fact, Ms. Baker stated that his dismissal was not a disciplinary action, but rather done for the needs of the school system.

57. Via letter dated November 22, 2022 to Dr. Sovine, Ms. Williams, Ms. Baker, and Ilissa N. Ramm, Esq., the Board's Chief Legal Counsel, Dr. Gladhill requested a hearing before an arbitrator pursuant to §6-202(a)(2) and (5) of the Education Article, in appeal of his dismissal from the position of Director of Special Education and again requested a copy of the charges against him.

58. To date, Dr. Gladhill has not received a response to his request for a copy of the charges against him and for arbitration.

59. Instead, on November 28, 2022, Ms. Baker wrote to Dr. Gladhill, advising him for the first time of his appeal rights: "Should you wish to appeal this reassignment, you may submit your appeal in writing to the Superintendent within 30 days of November 11, 2022, the initial date of notification of administrative transfer."  §4-205 of the Education Article permits employees to appeal administrative transfers to the county superintendent within thirty (30) days of being notified of the transfer.

60. On December 9, 2022, in an abundance of caution, Dr. Gladhill also appealed his transfer pursuant to §4-205 of the Education Article.

61. In response, Dr. Sovine invited undersigned counsel and Dr. Gladhill to a meeting at his office, which was held on December 20, 2022.  Dr. Sovine and Dr. Webster attended that meeting.

62. During that meeting, Dr. Gladhill pointed out that his skills as the Director of Special Education for the last fifteen (15) years do not transfer to an assistant principal position, making it difficult to understand how the needs of the school system could possibly be met by the demotion.  For example, Dr. Gladhill had not been in an in-school position for over seventeen (17) years prior to his demotion and, as such, has not been involved in school administration or direct student interactions.   Additionally, most of Dr. Sovine's responsibilities in his new position involve student discipline and not special education services.  Dr. Sovine did not articulate which skills Dr. Gladhill possessed that would have

been a benefit to the school system in his new position.  Instead, Dr. Sovine articulated that there were concerns about Dr. Gladhill's leadership, staff relations and follow-through. When undersigned counsel questioned whether those issues were the reason for Dr. Gladhill's demotion, Dr. Sovine declined to answer.

63. Clearly, Dr. Sovine used a backdoor approach to not only discipline Dr. Gladhill beyond the initial discipline that was issued by Dr. Webster in her "Letter of Concern," but also to take an adverse employment action against Dr. Gladhill, without the benefit of due process, which should have been afforded under § 6-202 of the Education Article.

64. Via letter dated January 3, 2023 from Regina L. Keller, Coordinator of Human Resources: A&S Personnel, Dr. Gladhill was advised that the Board "approved [Dr. Gladhill's] administrative transfer from a 12-month, Director of Special Education at the Center for Education Services to Assistant Principal at Western Heights Middle School effective December 2, 2022.  In that letter, Ms. Keller advised Dr. Gladhill that his salary would remain "frozen," until it is recalculated on December 2, 2023 to reflect his new assignment.

65. As of the date of this filing, the Board has not provided Dr. Gladhill with a copy of the charges against him, has not advised him of his right to a hearing, and has not provided him with an arbitration hearing, despite that he timely requested arbitration.

## COUNT I

42 U.S.C. §1983

(Denial of Due Process)

*Dr. Gladhill v. Dr. Sovine*

66. Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully restated herein.

67. Based on the statutory scheme of §6-202 of the Education Article, Dr. Gladhill clearly had a protectable due process property right relating to his removal from the position of Director of Special Education.

68. The governing statutory duties give a role to Dr. Sovine, as Superintendent, in the dismissal and suspension process, which includes various notice requirements. *See* Md. Code Ann., Educ. § 6-202(a)(1), (a)(2)(i) (stating that the county board's decision to suspend, dismiss, or remove an individual is to be taken "on the recommendation of the county superintendent" and requiring the "county board" to provide the required notice of disciplinary action and the right to appeal).

69. Notwithstanding that Dr. Gladhill's dismissal from Director of Special Education was not permitted by Md. Code Ann. Educ. Art. §6-202(a)(1) because it was for a reason not enumerated by that statute, Dr. Sovine, acting under color of Maryland state law, namely the administrative transfer provisions of Md. Code Ann. Educ. Art. §6-201, caused the deprivation of a federal right to Dr. Gladhill.

70. Dr. Sovine, individually and in concert with other Board employees, deprived Dr. Gladhill of his due process rights secured by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, when Dr. Sovine removed Dr. Gladhill from his position as Director of Special Education and demoted him to an Assistant Principal, without: (1) Dr. Sovine first making a recommendation to the Board for his dismissal; (2) the Board first providing Dr. Gladhill with a copy of the charges against him; (3) the Board first giving Dr. Gladhill an opportunity to request a hearing; (4) the Board moving this matter to arbitration, as Dr. Gladhill timely requested; and (5) the Board confirming Dr. Gladhill's dismissal.

71. Dr. Sovine's actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's reputation.

**COUNT II**
42 U.S.C. §1983
(Denial of Due Process)
*Dr. Gladhill v. Ms. Williams*

72. Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully restated herein.

73. Based on the statutory scheme of §6-202 of the Education Article, Dr. Gladhill clearly had a protectable due process property right relating to his removal from the position of Director of Special Education.

74. Under Maryland law, Dr. Gladhill could not have been removed from his position as Director of Special Education and demoted him to an Assistant Principal, without: (1) Dr. Sovine first making a recommendation to the Board for his dismissal; (2) the Board first providing Dr. Gladhill with a copy of the charges against him; (3) the Board first giving Dr. Gladhill an opportunity to request a hearing; (4) the Board moving this matter to arbitration, as Dr. Gladhill timely requested; and (5) the Board confirming Dr. Gladhill's dismissal.  Md. Code Ann., Educ. § 6-202(a).

75. The governing statutory duties give a role to Ms. Williams, as a member of the Board of Education, in the dismissal process, which includes various notice requirements and the opportunity to be heard. *See* Md. Code Ann., Educ. § 6-202(a)(1), (a)(2)(i) (stating that the county board's decision to suspend, dismiss, or remove an individual is to be taken "on the recommendation of the county superintendent" and requiring the "county board" to provide the required notice of disciplinary action and the right to appeal).

76. Notwithstanding that Dr. Gladhill's dismissal from Director of Special Education was not permitted by Md. Code Ann. Educ. Art. §6-202(a)(1) because it was for a reason not enumerated by that statute, Ms. Williams, acting under color of Maryland state law, namely

Title 3 of the Education Article and the dismissal provisions of Md. Code Ann. Educ. Art. §6-202, caused the deprivation of a federal right to Dr. Gladhill.

77. Ms. Williams, individually and in concert with other Board employees, deprived Dr. Gladhill of his due process rights secured by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution when Ms. Williams: (1) failed and refused to provide a copy of the charges to Dr. Gladhill; (2) failed and refused to notify Dr. Gladhill of his appeal rights; (3) failed and refused to permit Dr. Gladhill to appeal his dismissal via arbitration, as requested; and (4) permitted Dr. Sovine to demote Dr. Gladhill without adhering to the statutory process provided by §6-202 of the Education Article.

78. In fact, when Dr. Gladhill wrote to Ms. Williams, requesting arbitration and a copy of the charges against him, Ms. Williams did not respond.

79. Instead, Dr. Gladhill was dismissed from the position of Director of Special Education and demoted to an Assistant Principal position.

80. On January 3, 2023, Dr. Gladhill was advised that the Board, of which Ms. Williams is a member and the President, approved his demotion, without having first provided him with a copy of the charges against him, advising him of his right to a hearing, or affording him an arbitration hearing, as he timely requested to Ms. Williams and others.

81. Ms. William's actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant

demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's

career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's

reputation.

**COUNT III**
Article 24: Maryland Declaration of Rights
(Denial of Due Process)
*Dr. Gladhill v. Board of Education*

82. Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully

restated herein.

83. Based on the statutory scheme of §6-202 of the Education Article, Dr. Gladhill clearly had

a protectable due process property right relating to his removal from the position of

Director of Special Education.

84. Under Maryland law, Dr. Gladhill could not have been removed from his position as

Director of Special Education and demoted him to an Assistant Principal, without: (1) Dr.

Sovine first making a recommendation to the Board for his dismissal; (2) the Board first

providing Dr. Gladhill with a copy of the charges against him; (3) the Board first giving

Dr. Gladhill an opportunity to request a hearing; (4) the Board moving this matter to

arbitration, as Dr. Gladhill timely requested; and (5) the Board confirming Dr. Gladhill's

dismissal.  Md. Code Ann., Educ. § 6-202(a).

85. The governing statutory duties give a role to the Board of Education in the dismissal

process, which includes various notice requirements and the opportunity to be heard. *See*

Md. Code Ann., Educ. § 6-202(a)(1), (a)(2)(i) (stating that the county board's decision to suspend, dismiss, or remove an individual is to be taken "on the recommendation of the county superintendent" and requiring the "county board" to provide the required notice of disciplinary action and the right to appeal).

86. Notwithstanding that Dr. Gladhill's dismissal from Director of Special Education was not permitted by Md. Code Ann. Educ. Art. §6-202(a)(1) because it was for a reason not enumerated by that statute, the Board, acting under color of Maryland state law, namely Title 3 of the Education Article and the dismissal provisions of Md. Code Ann. Educ. Art. §6-202, caused the deprivation of a Maryland constitutional right to Dr. Gladhill.

87. The Board, individually and in concert with other Board employees, deprived Dr. Gladhill of his due process rights secured by Article 24 of Maryland Declaration of Rights when it: (1) failed and refused to provide a copy of the charges to Dr. Gladhill; (2) failed and refused to notify Dr. Gladhill of his appeal rights; (3) failed and refused to permit Dr. Gladhill to appeal his dismissal via arbitration, as requested; and (4) permitted Dr. Sovine to demote Dr. Gladhill without adhering to the statutory process provided by §6-202 of the Education Article.

88. In fact, when Dr. Gladhill wrote to Ms. Williams, President of the Board, requesting arbitration and a copy of the charges against him, the Board did not respond.

89. Instead, Dr. Gladhill was dismissed from the position of Director of Special Education and demoted to an Assistant Principal position.

90. On January 3, 2023, Dr. Gladhill was advised that the Board approved his demotion, without having first provided him with a copy of the charges against him, advising him of his right to a hearing, or affording him an arbitration hearing, as he timely requested.

91. The Board's actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's reputation.

92. The State of Maryland has waived sovereign immunity against the Board for claims of $400,000.00 or less.  Md. Code, Cts. & Jud. Proc. § 5-518(c)-(d).  Dr. Gladhill's claim against the Board in this Count is limited to $400,000.00 or less.

**COUNT IV**
Article 24: Maryland Declaration of Rights
(Denial of Due Process)
*Dr. Gladhill v. Dr. Sovine*

93. Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully restated herein.

94. Based on the statutory scheme of §6-202 of the Education Article, Dr. Gladhill clearly had a protectable due process property right relating to his removal from the position of Director of Special Education.

95. The governing statutory duties give a role to the Dr. Sovine, as Superintendent, in the dismissal and suspension process, which includes various notice requirements. *See* Md. Code Ann., Educ. § 6-202(a)(1), (a)(2)(i) (stating that the county board's decision to suspend, dismiss, or remove an individual is to be taken "on the recommendation of the county superintendent" and requiring the "county board" to provide the required notice of disciplinary action and the right to appeal).

96. Notwithstanding that Dr. Gladhill's dismissal from Director of Special Education was not permitted by Md. Code Ann. Educ. Art. §6-202(a)(1) because it was for a reason not enumerated by that statute, Dr. Sovine, acting under color of Maryland state law, namely the administrative transfer provisions of Md. Code Ann. Educ. Art. §6-201, caused the deprivation of a Maryland constitutional right to Dr. Gladhill.

97. Dr. Sovine, individually and in concert with other Board employees, deprived Dr. Gladhill of his due process rights secured by Article 24 of the Maryland Declaration of Rights, when Dr. Sovine removed Dr. Gladhill from his position as Director of Special Education and demoted him to an Assistant Principal, without: (1) Dr. Sovine first making a recommendation to the Board for his dismissal; (2) the Board first providing Dr. Gladhill

with a copy of the charges against him; (3) the Board first giving Dr. Gladhill an

opportunity to request a hearing; (4) the Board moving this matter to arbitration, as Dr.

Gladhill timely requested; and (5) the Board confirming Dr. Gladhill's dismissal.

98. Dr. Sovine's actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss

of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant

demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's

career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's

reputation.

**COUNT V**
Article 24: Maryland Declaration of Rights
(Denial of Due Process)
*Dr. Gladhill v. Melissa Williams*

99. Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully

restated herein.

100. Based on the statutory scheme of §6-202 of the Education Article, Dr. Gladhill clearly had

a protectable due process property right relating to his removal from the position of

Director of Special Education.

101. Under Maryland law, Dr. Gladhill could not have been removed from his position as

Director of Special Education and demoted him to an Assistant Principal, without: (1) Dr.

Sovine first making a recommendation to the Board for his dismissal; (2) the Board first

providing Dr. Gladhill with a copy of the charges against him; (3) the Board first giving

Dr. Gladhill an opportunity to request a hearing; (4) the Board moving this matter to arbitration, as Dr. Gladhill timely requested; and (5) the Board confirming Dr. Gladhill's dismissal.  Md. Code Ann., Educ. § 6-202(a).

102.   The governing statutory duties give a role to Ms. Williams, as a member of the Board of Education, in the dismissal process, which includes various notice requirements and the opportunity to be heard. *See* Md. Code Ann., Educ. § 6-202(a)(1), (a)(2)(i) (stating that the county board's decision to suspend, dismiss, or remove an individual is to be taken "on the recommendation of the county superintendent" and requiring the "county board" to provide the required notice of disciplinary action and the right to appeal).

103.   Notwithstanding that Dr. Gladhill's dismissal from Director of Special Education was not permitted by Md. Code Ann. Educ. Art. §6-202(a)(1) because it was for a reason not enumerated by that statute, Ms. Williams, acting under color of Maryland state law, namely Title 3 of the Education Article and the dismissal provisions of Md. Code Ann. Educ. Art. §6-202, caused the deprivation of a Maryland constitutional right to Dr. Gladhill.

104.   Ms. Williams, individually and in concert with other Board employees, deprived Dr. Gladhill of his due process rights secured by Article 24 of the Maryland Declaration of Rights when Ms. Williams: (1) failed and refused to provide a copy of the charges to Dr. Gladhill; (2) failed and refused to notify Dr. Gladhill of his appeal rights; (3) failed and refused to permit Dr. Gladhill to appeal his dismissal via arbitration, as requested; and (4)

permitted Dr. Sovine to demote Dr. Gladhill without adhering to the statutory process provided by §6-202 of the Education Article.

105.    In fact, when Dr. Gladhill wrote to Ms. Williams, requesting arbitration and a copy of the charges against him, Ms. Williams did not respond.

106.    Instead, Dr. Gladhill was dismissed from the position of Director of Special Education and demoted to an Assistant Principal position.

107.    On January 3, 2023, Dr. Gladhill was advised that the Board, of which Ms. Williams is a member and the President, approved his demotion, without having first provided him with a copy of the charges against him, advising him of his right to a hearing, or affording him an arbitration hearing, as he timely requested to Ms. Williams and others.

108.    Ms. Williams's actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's reputation.

## COUNT VI
42 U.S.C. §1983
(Conspiracy to Deny Due Process)
*Dr. Gladhill v. All Defendants*

109.    Dr. Gladhill incorporates by reference all other paragraphs of this Complaint as if fully restated herein.

110. The Defendants deprived Dr. Gladhill of his due process rights, secured by the Due Process

Clause of the Fourteenth Amendment to the U.S. Constitution, when Dr. Sovine removed

Dr. Gladhill from his position as Director of Special Education and demoted him to an

Assistant Principal, without: (1) Dr. Sovine first making a recommendation to the Board

for his dismissal; (2) the Board first providing Dr. Gladhill with a copy of the charges

against him; (3) the Board first giving Dr. Gladhill an opportunity to request a hearing; (4)

the Board moving this matter to arbitration, as Dr. Gladhill timely requested; and (5) the

Board confirming Dr. Gladhill's dismissal.

111. The Defendants reached an agreement to violate Dr. Gladhill's due process rights.

112. Ms. Baker and Dr. Webster investigated the circumstances surrounding Doe's transfer and

were aware that none of Dr. Gladhill's actions or inactions in that matter would give rise

to grounds for dismissal under §6-202 of the Education Article.

113. Nevertheless, for reasons unknown, the Defendants desired to remove Dr. Gladhill from

his position.

114. As such, they colluded to improperly utilize Dr. Sovine's authority under §6-201 of the

Education Article to dismiss Dr. Gladhill from his position as Director of Special Education

and demote him to a position that is lower in rank, pay, and responsibilities, thereby

bypassing the due process requirements that Maryland law expressly affords to Board

employees, such as Dr. Gladhill, before they can be dismissed.

115. During the meeting on November 10, 2022 in which Dr. Gladhill was informed he was being demoted, Ms. Baker and Dr. Webster stated to Dr. Gladhill that he would not work in special education for WCPS again.  Ms. Baker and Dr. Webster offered Dr. Gladhill a severance agreement, in an attempt to get him to willingly resign from his position and Dr. Webster actually encouraged Dr. Gladhill to resign. It is clear, therefore, that the decision to dismiss Dr. Gladhill from his position of Director of Special Education had been made at that point, before any of the statutory requirements of the Education Article had been followed.

116. Indeed, despite many written communications from undersigned counsel to Ms. Baker, beginning on or about November 10, 2022, about the requirements of the Education Article and Dr. Gladhill's due process rights, Ms. Baker ignored those rights and proceeded with Dr. Gladhill's demotion.

117. In an email dated November 12, 2022 to undersigned counsel, Ms. Baker confirmed that Dr. Gladhill's demotion was a collaborative effort: "…*we* are not recommending termination or discipline; therefore, there is no statement of charges" [emphasis added].

118. Despite Dr. Gladhill's request for arbitration on November 22, 2022 to Dr. Sovine, Ms. Williams, and Ms. Baker, the Defendants each ignored Dr. Gladhill's due process rights, request for a copy of the charges against him, and request for arbitration, and proceeded with Dr. Gladhill's demotion.

119. Despite Dr. Gladhill's appeal to Dr. Sovine under §4-205 of the Education Article, to which Ms. Baker was copied, which exhaustively laid out the requirements of the Education Article and due process, still the Defendants ignored Dr. Gladhill's due process rights and proceeded with Dr. Gladhill's demotion.

120. On January 3, 2023, Dr. Gladhill was advised that the Board approved his demotion, without having first provided him with a copy of the charges against him, advising him of his right to a hearing, or affording him an arbitration hearing, as he timely requested.

121. The Defendants' actions resulted in a deprivation of Dr. Gladhill's due process rights, the loss of a high-ranking position that Dr. Gladhill held for fifteen (15) years, a significant demotion to a position with lower pay, rank, and responsibilities, harm to Dr. Gladhill's career trajectory and prospects, and humiliation, embarrassment, and harm to Dr. Gladhill's reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays this Court:

(a) Award Plaintiff compensatory damages, including compensating Plaintiff for back pay and future pay and benefits, with interest, in an amount in excess of $75,000.00, against the Defendants, jointly and severally;

(b) Award Plaintiff reasonable attorney's fees and costs of this action against the Defendants, jointly and severally; and

(c) Grant such additional relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Respectfully submitted,

<u>      /s/Thomas J. Dolina                </u>
Thomas J. Dolina, Esquire, Bar No.: 00597
Bodie, Dolina, Hobbs, Friddell & Grenzer, P.C.
305 Washington Ave., Suite 300
Towson, Maryland 21204
(410)823-1250
(443)901-0802 (f)
tdolina@bodie-law.com
*Attorneys for Plaintiffs*