**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JEFFREY S. GLADHILL,

    Plaintiff,

    v.

WASHINGTON COUNTY BOARD OF
EDUCATION, *et al.*

    Defendants.

CIVIL NO. MJM-23-0098

## <u>MEMORANDUM OPINION</u>

Plaintiff Jeffrey S. Gladhill commenced this civil action against Defendants Washington County Board of Education ("WCBE") and David T. Sovine, Superintendent of Washington County Public Schools ("Dr. Sovine"); Melissa A. Williams, President of WCBE ("Ms. Williams"); Theresa L. Baker, Executive Director of Human Resources for Washington County Public Schools ("Ms. Baker"); and Jennifer Webster, Associate Superintendent of Washington County Public Schools ("Dr. Webster") (collectively, "Individual Defendants"). *See generally* Am. Compl., ECF No. 10. The six-count Amended Complaint generally alleges Defendants conspired to violate and violated Plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution and under Article 24 of the Maryland Constitution by transferring him from the position of Director of Special Education to the position of a middle school Assistant Principal. *Id.*

Currently pending is Defendants' motion to dismiss (the "Motion"). ECF No. 12. Plaintiff filed a response in opposition to the Motion, ECF No. 14, and Defendants filed a reply, ECF No. 15. The Court has reviewed the filings. On March 5, 2024, pursuant to Plaintiff's request, ECF

No. 17, this Court conducted a hearing and heard oral argument on the Motion. For the reasons stated below, the Motion will be GRANTED, and the Amended Complaint will be dismissed without prejudice.

## I.   BACKGROUND

### A.  Factual Background

The following facts are drawn from the Amended Complaint, documents incorporated into the Amended Complaint by reference, and public records.[1]

Plaintiff has been employed by WCBE at Washington County Public Schools ("WCPS") since 2003. Am. Compl. ¶ 1. He served as the district-wide Director of Special Education from 2007 until the at-issue employment transfer, which took effect on December 2, 2022. *Id.* On November 10, 2022, Plaintiff was notified of the intended transfer pursuant to Md. Code Ann., Educ. § 6-201. *Id.* Plaintiff alleges the transfer constitutes a demotion in pay, rank, and responsibilities. *Id.*

According to the Amended Complaint, Plaintiff's transfer was "precipitated by concerns surrounding the transfer of a third-grade student ('Doe') to a special education classroom" at a different school in the district. *Id.* ¶ 22. Plaintiff "was not directly involved in decisions about

---

[1]      When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must take the factual allegations in the complaint as true, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016), and consider documents either attached to the complaint as exhibits or incorporated by reference, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A court may also "take judicial notice of matters of public record" when considering a motion to dismiss. *Corbitt v. Baltimore City Police Dep't*, Civ. No. RDB-20-3431, 2023 WL 3793997, at *3 n.5 (D. Md. June 2, 2023). Certain correspondence between the parties and/or their counsel from November 14, 2022, through March 15, 2023, is included in Attachment 1 to the Motion and Attachment 2 to Defendants' reply brief. ECF Nos. 13-2 & 15-2. Correspondence referenced in the Amended Complaint is incorporated by reference: ECF No. 13-2, pages 1–16; and ECF No. 15-2 (all pages). Other correspondence attached to Defendants' Motion (including correspondence that post-dates the filing of the Amended Complaint) cannot be considered without converting the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d): ECF No. 13-2, pages 17–23 and 31–39. Other exhibits attached to Defendants' Motion contain statutes and case law, which have been considered: ECF No. 13-2, pages 24–30; ECF No. 15-1 (all pages); ECF No. 15-3 (all pages).

Doe's education." *Id.* ¶ 27. Nonetheless, the circumstances involving Doe's transfer resulted in Plaintiff receiving a disciplinary "Letter of Concern" from Dr. Webster on November 1, 2022, nine days before Plaintiff was notified of his transfer. *Id.* ¶ 32. The letter "expressed [Dr. Webster's] concern over Dr. Gladhill's involvement in transferring Doe to [another school]." *Id.* The letter stated that "any failure to meet the expectations expressed in this document or any failure to exercise professional judgment will result in additional disciplinary action up to, and including, a recommendation for termination of your employment." *Id.* ¶ 34. Plaintiff understood this letter to be "the final punishment for his alleged misconduct." *Id.* ¶ 35.

Thereafter, on November 10, 2022, Plaintiff met with Ms. Baker and Dr. Webster, who informed Plaintiff he was being placed on administrative leave. *Id.* ¶ 37. Ms. Baker and Dr. Webster informed Plaintiff that "he had two options: (1) accept what they termed a 'transfer' to an Assistant Principal position; or (2) accept a severance agreement and resign." *Id.* ¶ 37. At this time, Ms. Baker and Dr. Webster "strongly encouraged" Plaintiff's resignation and "refused to provide Dr. Gladhill with the reason(s) for his demotion." *Id.* After the meeting, Plaintiff was "escorted out of the building, his access to email was terminated, and his badge, computer and phone were confiscated." *Id.* ¶ 38.

On November 11, 2022, Ms. Baker wrote to Plaintiff to inform him he was being "administratively transferr[ed] . . . based on the needs of the district . . . ." *Id.* ¶ 39. On November 14, Plaintiff was told "there [was] no statement of charges" against him, as he was not being transferred for cause. *Id.* ¶ 41. He was advised of his appeal rights on November 28. *Id.* ¶ 67. The transfer took effect on December 2. *Id.* ¶¶ 1, 11, 21, 72.

On December 20, 2022—eighteen days after Plaintiff's transfer—Plaintiff and his counsel met with Drs. Sovine and Webster. *Id.* ¶ 70. At this time, "Dr. Sovine articulated that there were

concerns about Dr. Gladhill's leadership, staff relations and follow-through." *Id.* Defendants did not directly respond when asked whether these were the reasons for Plaintiff's transfer. *Id.*

Thereafter, on January 18, 2023, "Dr. Sovine issued a letter reaffirming his decision to demote Plaintiff, writing that a "common theme" in his investigation was that Plaintiff lacked leadership skills to successfully lead at the district level, including to garner results, make independent decisions, clearly communicate, and provide necessary supports and tools." *Id.* ¶ 73; ECF No. 13-2 at 10.

Plaintiff alleges Defendants "bypass[ed] the due process requirements that Maryland law expressly affords to Board employees . . . before they can be dismissed." Am. Compl. ¶ 2. Through counsel, Plaintiff advised Defendants multiple times of his claimed pre-transfer hearing right under Md. Code Ann., Educ. § 6-202 between November 2022 and February 2023.[2] Plaintiff alleges Defendants have not responded to his request for an arbitration hearing regarding his transfer. *Id.* ¶ 3.

### B.  Procedural Background

Plaintiff filed the initial Complaint in this matter on January 13, 2023. ECF No. 1. On March 7, 2023, Plaintiff filed his currently operative Amended Complaint, ECF No. 10, alleging six counts against Defendants: (I) denial of due process under 42 U.S.C. § 1983 (personally against Dr. Sovine); (II) denial of due process under § 1983 (personally against Ms. Williams); (III) denial of due process under Maryland law (against WCBE); (IV) denial of due process under Maryland law (personally against Dr. Sovine); (V) denial of due process under Maryland law (personally

---

[2]      Under § 6-202, before removing an individual, the county board shall send the individual a copy of the charges against them and permit them ten days to request a hearing before either the county board or an arbitrator. Md. Code Ann. § 6-202(a)(2)(i). Thereafter, the individual may appeal from the decision of the county board to the Maryland State Board of Education ("MSBE"). *Id.* at § 6-202(a)(4).

against Ms. Williams); and (VI) conspiracy to deny due process under federal law (against Dr. Sovine, Ms. Williams, and Ms. Baker).[3]

Defendants filed a motion to dismiss for failure to state a claim and lack of jurisdiction, ECF No. 13, Plaintiff filed an opposition, ECF No. 14, and Defendants filed a reply, ECF No. 15. The parties dispute which sections of Maryland's Education Article apply to Plaintiff's employment transfer. Defendants argue Plaintiff was transferred in accordance with Md. Code Ann., Educ. § 6-201, which involves the superintendent's power to transfer employees "as the needs of the schools require." Plaintiff argues he was "suspended or dismissed" from employment under § 6-202, which applies to for-cause dismissals and provides more procedural protections than § 6-201.

Plaintiff has an appeal pending under § 4-205, the mechanism for appealing decisions made under § 6-201. ECF No. 13-1 at 22. The appeal, which will be before an independent hearing examiner, has been stayed pending this Court's ruling on Defendants' Motion. ECF No. 13-2 at 39. Plaintiff contends the § 4-205 appeal is legally insufficient because it does not enforce his due process rights under § 6-202, namely a pre-transfer hearing and statement of the charges against him. Am. Compl. ¶ 88; Md. Code Ann., Educ. § 6-202(a)(2)(i) (providing that, before removing an individual, the county board shall send the individual a copy of the charges against them and permit them ten days to request a hearing).[4]

---

[3]     Dr. Webster is named as an Individual Defendant, but the Amended Complaint does not assert any causes of action against her specifically. At the hearing on this matter, Plaintiff clarified his intent to include Dr. Webster as a defendant to the conspiracy claim in Count VI.

[4]     This Opinion does not impact Plaintiff's right to appeal his transfer under § 4-205.

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual

enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 502–03 (D. Md. 2019).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts may only exercise subject-matter jurisdiction where a federal question is presented, 28 U.S.C. § 1331, or where the parties are of diverse citizenship

and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). Lack of subject-matter jurisdiction may be raised at any time by a litigant or the court itself. *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884). The plaintiff bears the burden of proving that the court has subject-matter jurisdiction over a case or claim. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

## III.   ANALYSIS

For the reasons stated below, this Court agrees with Defendants that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and, accordingly, must be dismissed.

### A.  Procedural Due Process

In Counts I and II of the Amended Complaint, Plaintiff alleges Dr. Sovine and Ms. Williams violated his procedural due process rights secured by the Fourteenth Amendment to the United States Constitution, and in Count VI, he alleges Individual Defendants conspired to violate his federal due process rights. Specifically, Plaintiff alleges Defendants demoted him without providing certain procedural protections, including a copy of the charges against him and a pre-demotion hearing. Am. Compl. ¶¶ 93, 97, 103. In Counts III, IV, and V, Plaintiff asserts claims under Article 24 of the Maryland Constitution based on the same alleged due process violations. *Id.* ¶¶ 105–131.[5]

---

[5]     The Court has original jurisdiction over Plaintiff's federal constitutional claims. *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 n.6 (1987) ("Federal district courts have original jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'") (citing 28 U.S.C. § 1331)). Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over state law claims that arise from a "common nucleus of operative fact[s]" as the § 1983 claims. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001); *see also Hall v. Maryland*, Civ. No. RDB-19-3005, 2020 WL 5642047, at *3 (D. Md. Sept. 22, 2020) (exercising supplemental jurisdiction over state law claims where plaintiffs asserted "violations of the federal Constitution and Maryland's constitution").

Title 42, United States Code, Section 1983 provides a cause of action against a person who, acting under color of state law, subjects another person within the jurisdiction of the United States to the deprivation of federal rights. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Balt. Police Dep't*, Civ. No. ELH-21-1211, 2023 WL 2185779, at *23 (D. Md. Feb. 22, 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). In general, a plaintiff may establish a conspiracy under § 1983 by demonstrating that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right . . . ." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Due process claims brought under Article 24 of the Maryland Constitution "are assessed under the same standard as a due process claim pursuant to 42 U.S.C. § 1983 . . . ." *Burkley v. Correct Care Sols.*, Civ. No. SAG-18-2665, 2020 WL 2198123, at *5 (D. Md. May 6, 2020) (citing *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1224 (Md. 2000)).

A plaintiff must make three showings to prevail on a procedural due process claim: "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011).[6] This claim is determined through a two-step process. *See Rorie v. Bd. of Educ.*, 653 F. Supp. 3d 217, 239 (D. Md. 2023). "First, the court must determine '[w]hether any procedural protections are due' by deciding whether 'a liberty or

---

[6]     The Amended Complaint does not sufficiently allege that Defendants deprived Plaintiff of a liberty interest. To state a due process claim based upon deprivation of the liberty interest in one's employment opportunities, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)).

property' interest within the meaning of the Fourteenth Amendment's Due Process Clause is at stake." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Second, the court must determine "'what process is due,' keeping in mind that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* at 40–41 (quoting *Morrissey*, 408 U.S. at 481). "So long as a deprivation is not *de minimis*, 'its gravity is irrelevant to the question whether account must be taken of the Due Process Clause.'" *Garraghty v. Jordan*, 830 F.2d 1295, 1299 (4th Cir. 1987) (quoting *Goss*, 419 U.S. at 567).

Notably, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481. In making this determination, "courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)); *see also Burch v. N.C. Dep't of Pub. Safety*, 158 F. Supp. 3d 449, 460 (E.D.N.C. 2016) ("[T]he limited nature of plaintiff's alleged interests aligned with defendants' provision of correspondingly limited pre-deprivation due process."). "This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon*, 494 U.S. at 126. A due process violation "actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.*

The United States Supreme Court has held that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To claim a property interest subject to due process protection, the person "must be entitled to a benefit created and defined by a source independent

of the Constitution, such as state law." *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1141 (4th Cir. 1990). A property interest can be "created by statute, administrative standard, contract, or implied promise." *Rosin v. Hill* ("*Rosin II*"), Civ. No. TDC-21-0983, 2022 WL 3621478, at *3 (D. Md. Aug. 23, 2022) (citing *Roth*, 408 U.S. at 576–77). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . ." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). But "[t]he hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12 (1978), *Goss v. Lopez*, 419 U.S. 565, 573–574 (1975), and *Roth*, 408 U.S. at 576–578).

"A property interest in public employment can be created by state statute, local ordinance, or contract." *Rosin v. Bd. of Educ. of Charles Cnty.* ("*Rosin I*"), Civ. No. TDC-21-0983, 2021 WL 4554342, at *6 (D. Md. Oct. 5, 2021) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976), and *Roth*, 408 U.S. at 576–77). "A public employee in an at-will position does not . . . have a protected property interest in continued public employment, absent rules and understandings entitling [him] to termination 'for cause.'" *Miller v. Baltimore City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 517 (D. Md. 2011) (citing *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 807 (M.D.N.C. 2011)). However, once the legislature elects "to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)). "While, under Maryland law, employees are presumed to be at-will

11

employees with no property right in continued employment, Maryland courts have recognized an exception to that conclusion where rules or policies provide restrictions on the discharge of an employee." *Rippeon v. Frederick Cnty. Bd. of Educ.*, Civ. No. WMN-10-1225, 2010 WL 3549484, at *3 (D. Md. Sept. 9, 2010). A state employer's termination or suspension of statutorily protected public employment constitutes a deprivation of a cognizable property interest. *See Garraghty*, 830 F.2d at 1299.

In this case, Plaintiff only alleges a property interest based on the Education Article of the Maryland Code (hereinafter, the "Education Article"). Under the Education Article, Plaintiff was a certificated employee in his role as Director of Special Education. *See* Am. Compl. ¶ 43; Md. Code Ann., Educ. § 6-201(b). The Education Article provides that the superintendent may transfer certificated employees "as the needs of the schools require . . . ." Md. Code Ann., Educ. § 6-201(b)(2)(II). Certificated employees may appeal § 6-201 transfers under § 4-205(c)(3): "A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board."

The Education Article further provides that the superintendent may "[s]uspend [certificated employees] for cause and recommend them for dismissal in accordance with § 6-202 . . . ." *Id.* at § 6-201(b)(2). Under § 6-202, upon recommendation by the superintendent, certificated employees may be suspended or dismissed on five bases: (i) immorality; (ii) misconduct in office; (iii) insubordination; (iv) incompetency; or (v) willful neglect of duty. *Id.* § 6-202(a)(1). The Education Article further requires that, before removing an individual under § 6-202, the county board must provide "a copy of the charges against the individual" and give the individual 10 days to request a hearing, either before the county board or before an arbitrator. *Id.* § 6-202(a)(2).

Plaintiff contends that he suffered a deprivation of his property interest when he was transferred from the role of Director of Special Education to serve as an Assistant Principal, a position that was "lower in rank, pay, and responsibilities." Am. Compl. ¶ 2. Specifically, Plaintiff alleges his new position involves "school administration" and "student discipline" rather than special education services. *Id.* ¶ 70. Plaintiff alleges his new position is "not a desirable one" and is one which Defendants "had difficulty" filling; Plaintiff "was the third person assigned to that position in a year." *Id.* ¶ 81. He states his new position was changed "from an 11-month position to a 12-month position[,]" despite the fact that "[t]here are no other 12-month Assistant Principal positions in WCPS." *Id.* Plaintiff alleges Defendants placed him "in an office without wireless internet, intentionally placing him in a physical work environment that impedes his ability to effectively perform his duties" *Id.*

The parties dispute whether Plaintiff's demotion constitutes a transfer under § 6-201 or a dismissal under § 6-202. Plaintiff contends he was effectively dismissed under § 6-202, while Defendants argue he was merely transferred under § 6-201. Specifically, Defendants argue that, because Plaintiff had access to a post-transfer appeal process in accordance with § 4-205(c), his rights were sufficiently protected. *See Baker v. Kent Cnty. Bd. of Educ.*, Civ. No. WMN-07-824, 2008 WL 11422694, *7 (D. Md. Oct. 15, 2008) ("Maryland law provides sufficient procedural protections by allowing Plaintiff to appeal a decision by a county superintendent" under § 4-205).

Plaintiff has adequately asserted a property interest in continued certificated employment, but he has not plausibly asserted an interest in his specific position as Director of Special Education. The Supreme Court has "emphasized" that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 430 (citations omitted); *see also Loudermill*, 470 U.S. at 535 (considering "what

13

pretermination process must be accorded a public employee who can be discharged only *for cause*") (emphasis added). In *Logan*, the Court held the plaintiff had a property interest in certain adjudicatory procedures because "his right to redress [was] guaranteed by the State . . . under . . . a 'for cause' standard . . . ." *Id.* at 431. The Fourth Circuit has similarly held that a public employee has a "constitutionally protected 'property' interest in his continued employment . . . [where] he could be discharged from [his] position only *for cause*." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citing *Loudermill*, 470 U.S. at 538–539) (emphasis added). However, the Fourth Circuit has repeatedly held that "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) (citing *Huang*, 902 F.2d at 1142, and *Royster v. Bd. of Trustees*, 774 F.2d 618, 621 (4th Cir. 1985)). "Rather, the property interest is more generally in continued employment . . . ." *Id.*; *see also Baker*, 2008 WL 11422694, at *6.[7]

---

[7]     In other circuits, courts have found that individuals retain a property interest in their particular position or rank if the "independent source" that provides the property interest specifically prohibits demotions *except for cause*. *See, e.g.*, *Ciambriello v. County of Nassau*, 292 F.3d 307, 315 (2d Cir. 2002) (finding employee maintained a property interest in his particular position or rank where a collective bargaining agreement provided the employee "could not be demoted except for just cause"); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1255 (10th Cir. 1998) (holding that, as a result of collective bargaining agreement, which contained specific grounds for demotion, "plaintiff had a legitimate property interest in his rank"); *Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1538 (6th Cir.) (holding that, because plaintiff could not be demoted without cause, she had a protected property interest in her job), *cert. denied*, 513 U.S. 947 (1994); *Wheaton v. Webb-Petett*, 931 F.2d 613, 616–17 (9th Cir. 1991) (holding that state employee had a constitutionally protected property interest in not being demoted where statute protects against dismissal except for cause); *Sowers v. City of Fort Wayne, Ind.*, 737 F.2d 622, 625 (7th Cir. 1984) ("In conclusion, we hold that plaintiffs had property interests in their pre-demotion ranks of which they could be deprived only for cause and only in accordance with due process of law."); *Shawgo v. Spradlin*, 701 F.2d 470, 476 (5th Cir. 1983) (holding that plaintiff had a constitutionally protected property interest in not being demoted where statute provided demotions could only be "for cause"); *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1308 (11th Cir. 1999) (acknowledging that "a property interest in rank is at least theoretically possible and a demotion could trigger procedural due process obligations even though the employee continues to work for the employer" where statute provided demotions could only be "for cause").

Here, Plaintiff's property interest is created by, and limited by, the Education Article. Under Md. Code Ann., Educ. § 6-202, Plaintiff has an interest in not being "suspend[ed] or dismiss[ed]" from certificated employment except for the five bases delineated in § 6-202(a)(1). That is to say, Plaintiff has a property interest in continued certificated employment because § 6-202 guarantees that he could only be suspended or dismissed from a certificated position for cause. Conversely, under § 6-201, Plaintiff, as a certificated employee, may be transferred at the superintendent's discretion "as the needs of the schools require . . . ." *Id.* at § 6-201(b)(2)(ii). The superintendent does not need "cause" to support such a decision. Rather, she or he need only "be able to articulate some basis for the reassignment that is neither arbitrary, unreasonable, nor illegal." *Rawles v. Prince George's Cnty. Bd. of Educ.*, MSBE Op. No. 21-54 at 8 (Dec. 7, 2021). This standard falls substantially short of a "for cause" standard and does not give rise to a property interest in any particular certificated position.

Prior decisions of the Maryland State Board of Education ("MSBE") support this conclusion. *See Arroyo v. Bd. of Educ.*, 851 A.2d 576, 587 (Md. 2004) ("The very nature of the administrative framework of the Education Article implicitly indicates that it is meant to grant primary jurisdiction to a board of education in questions involving controversies and disputes that arise under the provisions of the Education Article, and, we have so held in the past."); *Brown v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. DLB-20-2632, 2023 WL 2410849, at *3, n.3 (D. Md. March 7, 2023). Because the MSBE has the "'last word' on controversies or disputes involving the proper administration of the public school system," this Court considers the MSBE's expertise in interpreting the Education Article. *Hurl v. Bd. of Educ.*, 667 A.2d 970, 976 (Md. Ct. Spec. App. 1995); *see also Farrell v. Cox*, Civ. No. GLR-16-2262, 2019 WL 2329839, at *6 (D. Md. May 31, 2019) (recognizing "the deference courts traditionally give to MSBE's rulings");

*Balt. City Bd. of Sch. Comm'rs v. City Neighbors Charter Sch.*, 929 A.2d 113, 124 (Md. 2007) (recognizing that the MSBE has "a visitatorial power of such comprehensive character as to invest [it] 'with the last word on any matter concerning educational policy or the administration of the system of public education,'" requiring courts to give "special deference . . . to its interpretation of statutes that it administers[]") (citations omitted); *Kucharek v. Hanaway*, 902 F.2d 513 (7th Cir. 1990) ("federal courts frequently defer to state executive interpretations of state statutes") (citing *Bd. of Educ. v. McCluskey*, 458 U.S. 966 (1982), and *Huggins v. Isenbarger*, 798 F.2d 203 (7th Cir. 1986)).

The MSBE has previously interpreted §§ 6-201 and 6-202 of the Education Article and determined that demotions do not implicate § 6-202, but instead constitute involuntary transfers under § 6-201. *See Hayes v. Bd. of Educ. of Carroll Cnty.*, MSBE Op. No. 719 (Jan. 31, 1978). In *Hayes*, the appellant, a certificated school employee, was demoted from a principal to a teacher. *Id.* at 719. The MSBE determined that "[t]he suspension or dismissal to which [§ 6-202] relates is suspension or dismissal from *all* professional services, not the termination of one type of professional service while an opportunity is offered to continue in another professional capacity." *Id.* at 721. The MSBE further noted that the Education Article "grants to certificated employees only tenure as teachers and not in any more elevated position . . . ." *Id.* at 722; *see also Johnson v. Somerset Cnty. Bd. of Educ.*, MSBE Op. No. 14-38, at 4 (July 22, 2014) (finding that "[certificated] employees in administrative positions acquire and maintain tenure in employment with the school system *and not in any particular position*") (emphasis added). Indeed, the MSBE has "consistently held that discipline for which cause must be shown, and to which the procedural requirements of [§ 6-202] apply, relates specifically to suspensions and dismissals." *Rawles v. Prince George's Cnty. Bd. of Educ.*, MSBE Op. No. 21-54 (Dec. 7, 2021). A "transfer of personnel to a lateral

position *or to a position of lower rank* is within the discretion of the local superintendent." *Johnson*, MSBE Op. No. 14-38 at 4 (emphasis added). This Court is persuaded that the MSBE is correct in its interpretation of §§ 6-201 and 6-202.

Considering the foregoing, Plaintiff could not have more than a "unilateral expectation" of continued employment in his particular position, which does not confer to a constitutionally protected property interest. *Roth*, 408 U.S. at 577. Indeed, the Education Article grants substantial discretion to the superintendent to effect employment transfers such that Plaintiff could not have had a "legitimate claim of entitlement" in his specific position. *Id.*; *see also McGuire v. Indep. Sch. Dist. No. 833*, 863 F.3d 1030, 1035 (8th Cir. 2017) (finding that, for the plaintiff to have "a legitimate claim of entitlement to the renewal of his [employment] contract, he must show that the [statute] [did] not leave 'considerable discretion' in the hands of the School Board") (citing *McDonald v. City of Saint Paul*, 679 F.3d 698, 705 (8th Cir. 2012)). Rather, as the Fourth Circuit has held in other Fourteenth Amendment due process cases, for a statute to convey a protectible property interest, the statute must "act to limit meaningfully the discretion of the decisionmakers." *Smith v. Ashcroft*, 295 F.3d 425, 429–30 (4th Cir. 2002) (quoting *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996)); *see also Maldonado-Guzman v. Sessions*, 715 Fed. App'x. 277, 284 (4th Cir. 2017) ("Statutes that only provide discretionary relief . . . do not create a property or liberty interest subject to the Due Process Clause.") (citing *Smith*, 295 F.3d at 430). The Education Article provides that the "superintendent has broad statutory authority to transfer personnel 'as the needs of the [schools] require.'" *Johnson*, MSBE Op. No. 14-38 at 4 (citing Md. Code Ann. Educ. § 6-201(b)). This broad authority includes the power to transfer certificated employees to positions they deem less desirable or lower in rank or responsibility, so long as they remain in certificated positions and are not transferred arbitrarily,

17

unreasonably, or illegally. *See id.*; *Hayes*, MSBE Op. No. 719. Thus, the Education Article does not create a property interest in an employee's particular position.[8]

Notably, other courts in this circuit have arrived at similar conclusions. In *Cominelli v. Rector & Visitors of the Univ. of Va.*, the district court found that "an intra-departmental demotion cannot implicate a protectible property interest." 589 F. Supp. 2d 706, 713–714 (W.D. Va. 2008). The *Cominelli* court specifically recognized

> other circuits have held that intra-departmental demotions . . . do not implicate property interests subject to the protection of the Due Process Clause. *See, e.g.*, *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (demotion from department chairman to professor not a denial of a protected property interest); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (reduction of graduate student's teaching duties not denial of a protected property interest). The Fourth Circuit cited this very proposition in dicta to hold that the transfer of a tenured professor from one department to another 'does not implicate any property interest protected by the Due Process Clause.' *Huang v. Board of Governors*, 902 F.2d 1134, 1142 (4th Cir. 1990).

*Id.* Similarly, in *Garner v. Steger*, the district court evaluated the transfer of a Virginia Tech professor from one department to another without a reduction in pay. 69 F. Supp. 3d 581, 584–85 (W.D. Va. 2014). The independent source of state law that defined the plaintiff's property interest was the University Handbook. *Id.* at 590. The Handbook provided that "[n]either notice of non-reappointment nor removal for cause is required to effect a reassignment." *Id.* at 586. Thus, the property interest attached only if the plaintiff was being demoted as a "severe sanction" because the Handbook required cause for such sanctions. *Id.*

---

[8]   Plaintiff's argument that a significant demotion is equivalent to a termination relies on cases that are readily distinguishable from the instant case. Specifically, both *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006), and *Jackson v. Clark*, 564 F. Supp. 2d 483 (D. Md. 2008), involved liberty interests, not property interests. Further, neither case required an interpretation of the Education Article to discern whether a constitutionally protected property interest was at stake.

Similarly, in the instant case, a property interest would have been implicated only if Plaintiff was suspended or dismissed for cause under § 6-202. "The suspension or dismissal to which [§ 6-202] relates is suspension or dismissal from *all* professional services, not the termination of one type of professional service while an opportunity is offered to continue in another professional capacity." *See Hayes*, MSBE Op. No. 719 at 721. Because the Education Article grants a property interest only in continued certificated employment, Plaintiff did not have a property interest in his specific position as Director of Special Education. *Cf. Shawgo v. Spradlin*, 701 F.2d 470, 476 (5th Cir. 1983) (finding a protected property interest where employees could only be demoted "for cause," but finding that the "limited property interest against arbitrary suspensions" of police officers did not require a hearing prior to the suspension); *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956 (3d Cir. 2019) ("where there is ambiguity or it is explicit that a public employee's salary can be reduced, the Courts of Appeals do not recognize a property interest in a set salary").

In conclusion, Plaintiff has not asserted any constitutionally protected property interest in his position as Director of Special Education. Given his transfer was to a certificated position, the Amended Complaint also falls short of alleging any deprivation of Plaintiff's property interest in continued certificated employment. Thus, this Court need not evaluate what process was afforded

to Plaintiff regarding his transfer.[9] Plaintiff's claims of violations of federal (Counts I, II, and VI)[10] and state (Counts III, IV, and V)[11] due process shall be dismissed for failure to state a claim upon which relief may be granted.

---

[9]    Indeed, because that process is underway and has not concluded, it would be premature to make any assessment of its constitutional sufficiency, even if a protectible property interest was at stake. *See Zinermon*, 494 U.S. at 126 ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); *Fields*, 909 F.2d at 97 ("[T]o determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state.").

[10]   In Count VI, Plaintiff alleges that Individual Defendants conspired to deny him due process. In addition to the grounds for dismissal explained in Section A, *supra*, Plaintiff's conspiracy claim is also barred by the intracorporate doctrine. This doctrine

> holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

*Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008) (citations omitted). "The intracorporate conspiracy doctrine is equally applicable to governmental entities such as school districts." *Wright v. Carroll Cnty. Bd. of Educ.*, Civ. No. ELH-11-3103, 2013 WL 4525309, at *12 (D. Md. Aug. 26, 2013). The Amended Complaint does not allege sufficient facts to render plausible any exception to applying the doctrine to this case. *See Baltimore-Washington Tel. Co.*, 584 F. Supp. 2d at 744 (recognizing two exceptions to the general rule: (1) "where the officer or agent has an 'independent legal stake in achieving the corporation's legal objective'"; and (2) "where the acts of the officers were unauthorized by the corporate defendant[]").

[11]   Count II and Count V allege due process violations under federal and state law against Ms. Williams, the President of the Board of Education. The Court notes that, in addition to the reasons stated in Section A, *supra*, Ms. Williams must also be dismissed as a defendant because "no *individual* board member or board employee may be held liable for the actions of a board as a whole." *Smith-Hosch v. Bramble*, Civ. No. DKC-18-3659, 2019 WL 4060017, at *4 (D. Md. Aug. 28, 2019). For a plaintiff to establish a plausible § 1983 claim against an individual board member, she or he must: (1) make "specific allegations regarding the *individual* conduct of *a* member of [the] board"; and (2) demonstrate that the individual conduct "deprived the plaintiff of a federal right." *Id.* Critically, Plaintiff "must do more than make conclusory claims of individual member conduct; specific allegations of individual conduct are required." *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 664 (D. Md. 2021). The Amended Complaint fails to assert such allegations and, accordingly, the claims against Ms. Williams would be subject to dismissal even if Plaintiff stated a plausible due process claim against the other Defendants.

### B. Qualified Immunity

Plaintiff's procedural due process claims against Individual Defendants are also subject to dismissal because Individual Defendants have qualified immunity against these claims.

In general, "[q]ualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't Servs.*, 975 F.3d 416, 428 (4th Cir. 2020) (citing *District of Columbia v. Wesby*, 538 U.S. 48, 63 (2018)). Qualified immunity applies to school officials "performing discretionary functions . . . ." *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 503 (D. Md. 2014) (internal quotation marks omitted) (citing *Cole v. Buchanan Cnty. Sch. Bd.*, 328 Fed. App'x. 204, 208 (4th Cir. 2009)).

Courts employ a two-prong inquiry to determine whether a government official enjoys qualified immunity: "(1) whether the official violated a constitutional right; and if so (2) whether the right was 'clearly established' at the time of its violation." *Id.* (quoting *Rock for Life–UMBC v. Hrabowski*, 411 Fed. App'x. 541, 547 (4th Cir. 2010)). Only one question must be resolved in favor of the official for qualified immunity to apply.

To determine whether a right is "clearly established," the court "must examine controlling authority in this jurisdiction, which includes 'the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" *Dean v. McKinney*, 976 F.3d 407, 417 (4th Cir. 2020) (quoting *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). If there are no such decisions, the court "may look to 'a consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Owens*, 372 F.3d at 280 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

To conclude that a right is "'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 636 (1987). "[A]lthough public officials may be 'charged with knowledge of constitutional developments, [they] are not required to predict the future course of constitutional law.'" *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) (quoting *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989)). "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable [official] would have understood, under the circumstances at hand, that his behavior violated the right." *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); *see also Wilson v. Layne*, 526 U.S. 603, 614 (1999) (finding that whether an official may be held personally liable turns on the "'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken") (citing *Anderson*, 483 U.S. at 639). In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but in the light of pre-existing law, the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 733 (2002). The "salient question . . . is whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Id.*

Under the facts contained in the Amended Complaint, Individual Defendants are entitled to qualified immunity because, as explained in Section A, *supra*, Plaintiff fails to allege they effected his employment transfer in violation of any federal statutory or constitutional right. Even if Plaintiff had adequately alleged unlawful conduct by Individual Defendants, it was not clearly

established—that is to say, "beyond debate"—that that the employment transfer violated Plaintiff's rights.

In *Garner*, the district court found qualified immunity to apply because the question of whether the plaintiff's employment transfer qualified as a "severe sanction" was a "very close one." 69 F. Supp. 3d at 591. The court found that, if the defendants "had been reviewing the cases and looking at the language and holdings in *Royster* and *Huang*, it is easy to understand that [they] would have believed the change in position here would not violate the Handbook, particularly since [the plaintiff's] base salary was continued." *Id.* at 592.

At the time of the employment transfer challenged in the instant case, Fourth Circuit precedent consistently held that "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." *Fields*, 909 F.2d at 98 (citing *Huang*, 902 F.2d at 1142, and *Royster*, 774 F.2d at 621). "Rather, the property interest is more generally in continued employment . . . ." *Id.*[12]

---

[12]   Plaintiff relies on *Rosin* and *Rorie* to support his argument that Defendants had fair warning that Plaintiff was entitled to notice and hearing before his transfer. ECF 14 at 32–33. Those related cases involved the demotions of two Maryland public school employees in the same district based on the same incident. *Rosin I*, 2021 WL 4554342 at *1. Both plaintiffs were suspended without pay following the incident. *Id.* at *2–3. In addition to their due process claims, the plaintiffs asserted claims of employment discrimination, defamation, and breach of contract. *Id.* at *4–10; *Rorie*, 2021 WL 4290872 at *5–12. The plaintiffs further claimed that they had not received *any* process, including the procedural protections of § 6-201 of the Education Article. Ultimately, the Court held that, at the motion-to-dismiss stage, the plaintiffs had sufficiently alleged violations of a protected property interest in their positions. *Rosin I*, 2021 WL 4554342 at *8; *Rorie*, 2021 WL 4290872 at *9.

*Rosin* and *Rorie* are neither Supreme Court nor Fourth Circuit decisions, *see Dean*, 976 F.3d at 417 (the court "must examine controlling authority in this jurisdiction, which includes the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose") (internal quotation marks omitted), and they do not overturn the Fourth Circuit's binding precedent that "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." *Fields*, 909 F.2d at 98 (citing *Huang*, 902 F.2d at 1142, and *Royster*, 774 F.2d at 621). Accordingly, it was not clearly established to the Individual Defendants in this case that transferring Plaintiff would violate his due process rights.

Even if Plaintiff had a property interest in his specific position, "the [due] process required in relation to a demotion [or reassignment] . . . is less well-defined" than it is for terminations. *Rorie*, 653 F. Supp. 3d at 240. Federal circuit courts of appeals have arrived at different conclusions as to whether *Loudermill*'s predeprivation due process rule applies to cases involving demotions. Some circuits have required such process. *See, e.g.*, *Sowers v. Ft. Wayne*, 737 F.2d 622, 625 (7th Cir. 1984) (holding that the "plaintiffs had property interests in their pre-demotion ranks of which they could be deprived only for cause and only in accordance with due process of law"); *Ross v. Clayton Cnty.*, 173 F.3d 1305, 1308 (11th Cir. 1999) ("[A] property interest in rank is at least theoretically possible and a demotion could trigger procedural due process obligations even though the employee continues to work for the employer"); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 321 (2d Cir. 2002) ("[T]he process due [the plaintiff] was notice of the charges against him and the opportunity to be heard before demotion.").  In each of those cases, however, the independent source that conveyed a protected property interest provided that demotions had to be "for cause." In the instant case, the Education Article grants substantial discretion to the superintendent to effect employment transfers. The superintendent must not make transfers arbitrarily, unreasonably, or illegally, but such requirements do not "meaningfully limit" his authority, even for transfers to certificated positions of a lower rank. *See Smith*, 295 F.3d at 429–30; *Johnson*, MSBE Op. No. 14-38 at 4.

Accepting the facts alleged in the Amended Complaint as true, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Individual Defendants are entitled to qualified immunity because they did not violate a clearly established federal right.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss for failure to state a claim (ECF No. 50) will be GRANTED, and the Amended Complaint will be dismissed without prejudice.

A separate Order will issue.


March 22, 2024                               _____/S/_____
                                             Matthew J. Maddox
                                             United States District Judge